519 So.2d 1194 (1988)
Steven Christopher GRIFFIN and Lynn Griffin
v.
TENNECO OIL COMPANY and XYZ Insurance Company.
No. CA-7661.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1988.
Writ Denied March 18, 1988.
John C. Combe, Jr., Mark E. Seamster, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee, Tenneco Oil Co.
Shelley Hammond Provosty, John P. Hammond, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for third-party defendant-appellant, MRO Services, Inc.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
KLEES, Judge.
Defendant MRO Services, Inc. ("MRO") appeals the lower court's granting of summary judgment in favor of co-defendant Tenneco Oil Company ("Tenneco") requiring MRO to defend and indemnify Tenneco against any and all causes of action asserted by the plaintiff in this case. We affirm.
The plaintiff, Steven Griffin, filed suit against Tenneco to recover for injuries he sustained as a result of the fire at Tenneco's Chalmette refinery on October 1, 1985. On that date, plaintiff was an employee of MRO working at the refinery pursuant to a contract between MRO and Tenneco whereby MRO agreed to perform certain electrical services at the refinery.
Tenneco filed a third party demand against MRO for contractual indemnity, and subsequently moved for summary judgment declaring that the contract between the defendants required MRO to defend and indemnify Tenneco against all claims asserted by plaintiff. The motion was heard on December 12, 1986. The trial court granted the motion, issuing a summary judgment on January 21, 1987.
Appealing that judgment, MRO contends that Tenneco's motion should have been denied because: (1) The Louisiana Anti-Indemnity Statute (R.S. 9:2780) voids the indemnity provisions in the Tenneco-MRO contract; or (2) Alternatively, the contract is ambiguous as to MRO's obligation to indemnify. The trial judge rejected both of these arguments, and we find no error in his judgment.
The Louisiana Oilfield Indemnity Act provides, in pertinent part:
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or *1195 drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement" as it pertains to a well for oil, gas, or water, drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.
R.S. 9:2780 (Emphasis added.). At issue is whether this statute applies to the Tenneco-MRO contract, which is an agreement to perform electrical services at a petroleum refinery. MRO argues that the statute does apply because refining is "related to the exploration, development, production or transportation of oil, gas or water." We disagree.
The statute repeatedly refers to agreements "pertaining to a well [or wells] for oil, gas or water or drilling for minerals." The Tenneco-MRO contract is clearly not an agreement relating to wells or drilling. Refining operations are not mentioned anywhere in the statute, although the Legislature could have easily included such operations had it wanted to do so. In our view, the recurring reference to wells and drilling combined with the rather general language relied upon by MRO makes the statute ambiguous.
According to the Civil Code, when the words of a law are dubious, its meaning may be ascertained by examining the context in which the words are used (Article 16) or by considering the intent of the Legislature in enacting the law (Article 18). Although the phrase "operations related to the ... development [or] production ... of oil, gas or water," if interpreted in the very broadest sense, could conceivably include refining, a reading of the statute as a whole convinces us that this was not the Legislature's intent. In Clarkco Contractors v. Texas Eastern Gas Pipeline, 615 F.Supp. 775 (M.D.La.1985), the federal court, in order to rule on a motion to transfer the case to Texas, had to decide whether the Louisiana Anti-Indemnity Statute would void the indemnity provision in a maintenance and repair contract between a natural gas transmission company and a pipeline contractor. Using a similar analysis, the court stated:

*1196 The "cause" which induced the Louisiana Legislature to enact the statute is found in Subsection A, an inequity, "contained in some agreements pertaining to wells for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state."
. . . . .
... The question here, is whether the Louisiana Legislature intended this anti-indemnity statute to include contracts pertaining to natural gas transmission pipelines when the contract does not pertain to "wells for oil, gas, or water, or drilling for minerals."
Subsection C of the statute defines "agreement" as "any agreement ... concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals ... including but not limited to drilling [here follows a long list of other well drilling activities]..., or, otherwise rendering services ... in connection with any well drilled ..., or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral..." (Emphasis supplied). A literal application of the words "transportation of oil, gas, or water" would include every train with tank cars of crude oil, refined products or natural gas, every ship carrying any such product into or out of a Louisiana port, every barge load of those products on the Mississippi, the Intercoastal Waterway or other navigable streams, and every truck load of such products upon the highways, even bottled water being hauled to communities with bad tasting water, such as New Orleans. Since the Legislature has consistently used the words contracts pertaining to wells for oil, gas, or water, or drilling for minerals, I am persuaded that the Legislature intended to include only transportation contracts pertaining to wells or drilling for minerals.
... This contract, which relates to work to be performed upon an interstate natural gas transmission pipeline, is not an agreement "pertaining to wells, for oil, gas, or water, or drilling for minerals" and the statute does not apply to it.
615 F.Supp. at 780-81 (Emphasis in the original).
Although MRO dismisses the Clarkco decision as "dicta," we find the court's reasoning to be sound. The Legislature was obviously concerned about wells and drilling, not about pipeline transportation or refining of oil, and this concern is reflected in the statute. We will not extend the scope of the statute beyond the legislative intent by broadly interpreting an isolated phrase. We therefore conclude that the Anti-Indemnity Statute does not apply to the Tenneco-MRO agreement.
MRO's second argument is that the contract itself is ambiguous as to MRO's obligation to indemnify, and therefore the ambiguity should be resolved in favor of the indemnitor. See Miller v. Harvey, 408 So.2d 946, 951 (La.App.2d Cir.1981). The contract consists of a "Base Agreement" and several "Exhibits." The indemnity provision relied upon by Tenneco is found in "Exhibit A-2," which contains a list of deletions and modifications to the base agreement. It reads:
4. Reciprocal Indemnification for Claims of EmployeesNotwithstanding any other provision of this Agreement, OWNER and CONTRACTOR agree to the following indemnification obligations for all losses, costs, and expenses (including but not limited to all defense costs and attorney's fees) of alleged or actual legal liabilities and negotiated settlements for personal injuries, illnesses, or deaths sustained by employees, including liabilities and settlements based on occurrences caused or alleged to be caused by the other party's sole negligence or gross negligence, or involving the concurrent negligence of the other party:

A. In the case of claims made by CONTRACTOR'S employees or by his subcontractor's employees, if the injury, illness, or death is sustained while the employee is in, on, or about the premises of OWNER, or is otherwise associated with CONTRACTOR'S services performed for OWNER, the CONTRACTOR will indemnify OWNER *1197 (including its subsidiaries, affiliated and parent companies and their employees, officers, directors, agents, and representatives.)
B. In the case of claims made by OWNER'S employees, if the injury, illness, or death is sustained in the course of the employee's association in any way with the CONTRACTOR'S employees in the scope of their work, or with the services being performed by the CONTRACTOR and is sustained in, on, or about the premises of OWNER, OWNER will indemnify the CONTRACTOR, its subcontractors, and their employees, officers, and directors.
MRO claims that this provision conflicts with an indemnity provision found in paragraph 17.1 of "Exhibit A," which reads:
17.1 The CONTRACTOR agrees to protect, indemnify and hold the OWNER free and harmless from and against any and all claims, liens, demands, and causes of action of every kind and character, including the amounts of judgments, penalties, interest, court costs and legal fees incurred by the OWNER in defense of same arising in favor of governmental agencies or third parties (including employees of the CONTRACTOR or subcontractors) on account of taxes, claims, liens, debts, personal injuries, death, or damages to rented equipment or other property, and without limitation by enumeration, all other claims or demands of every character occurring or in anywise incident to, in connection with or arising out of the work to be performed by the CONTRACTOR hereunder, except insofar as responsibility may be expressly assumed by the OWNER under the provisions of this Contract.
After examining these two provisions, we conclude that there is no conflict. Paragraph 4 of Exhibit A-2 is a reciprocal agreement whereby each party takes on the responsibility for personal injury claims made by its own employees, regardless of fault. In paragraph 17.1 of Exhibit A, MRO agrees to protect and indemnify Tenneco for any type of claim (including taxes, liens, and property damage, as well as personal injuries) made by any third party (including employees of MRO) which arises out of the work to be performed by MRO, except insofar as responsibility may be expressly assumed by Tenneco under other provisions of the contract. We find that the two indemnity provisions are compatible, with any potential conflict being abrogated by the specific exclusion in paragraph 17.1 of all claims for which Tenneco has assumed responsibility in other parts of the agreement, and by the stipulation in paragraph 4 that it applies "[n]otwithstanding any other provision of this Agreement." Moreover, even if there were a conflict between the two provisions, paragraph 4 would clearly govern, not only because it is the more specific provision, but also because it is contained in an addendum consisting entirely of deletions and modifications to the main agreement, which indicates the drafters' intent that these final provisions prevail over prior inconsistent ones. Because there is no conflict between the indemnity clauses, we find, as did the district court, that the contract is not ambiguous with regard to MRO's obligation to indemnify.
Accordingly, we affirm the summary judgment issued by the court below on the ground that there is no genuine issue of material fact, and that as a matter of law, MRO Services, Inc. is contractually obligated to indemnify Tenneco Oil Company against the claims asserted by plaintiff in his original petition. La.C.C.P. art. 966.
AFFIRMED.