532 So.2d 963 (1988)
James R. ST. AMANT
v.
GLESBY-MARKS CORPORATION.
No. 88-CA-253.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1988.
Rehearing Denied November 17, 1988.
Pierre F. Gaudin, Gretna, for plaintiff-appellee James R. St. Amant.
Keith Contreary, Windhorst, Gaudry, Talley & Ranson, Harvey, for defendants-appellees Seascope Inc. and Zurich Ins. Co.
Wood Brown, III, Gus A. Fritchie, III, Robert E. Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendant-appellant Glesby-Marks Corp.
Ronald A. Johnson, Bettye A. Barrios, Johnson & McAlpine, New Orleans, for defendants-appellees Certain Underwriters at Lloyd's and Certain Institute of London Companies.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
Plaintiff, James R. St. Amant, an employee of Seascope, Inc., filed suit for an injury to his right hand sustained during the course of his employment while operating *964 a hydrostatic well testing unit leased from defendant, Glesby-Marks Corporation. Defendant filed a third party demand against Seascope, Inc. and Zurich Insurance Company in an attempt to enforce an indemnity clause in the lease contract. Seascope, Inc. raised the aegis of the Louisiana Oilfield Indemnity Act (LSA-R.S. 9:2780) and successfully moved for a summary judgment dismissing the third party demand. Glesby-Marks appealed. For the reasons assigned we affirm the ruling of the trial court.
Defendant's indemnity claim was based on paragraph 8 of the lease agreement, which provided:
"INDEMNITY: Without limiting any of the other terms hereof and in addition to any insurance obtained pursuant to Section 11, Lessee does hereby assume liability for and agrees to indemnify, protect, save, keep and hold harmless Lessor, its successors and assigns, from and against any and all losses, damages, injuries, claims, liabilities, demands and expenses (including attorney's fees and other legal expenses, whether or not a lawsuit or other form of judicial proceedings are instituted by or against Lessor, its successors or assigns) of or on account of the possession, use, operation, maintenance, storage, condition (including, without limitation, latent or other defects and whether or not discoverable by Lessor) or operation of any item of Equipment leased hereunder and by whomever used, stored or operated during the term of this Agreement. The indemnity and assumptions of liability in this Section 8 shall survive the termination of this Agreement."
The trial judge found the indemnity clause was invalid and unenforceable. His decision was based on the Louisiana Oilfield Indemnity Act, LSA-R.S. 9:2780, which provides in pertinent part as follows:
"A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or *965 production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation."
Glesby-Marks contends that the legislative intent in enacting the Louisiana Oilfield Indemnity Act was to eliminate or offset unequal bargaining positions between multinational corporations and small local contractors who enter into master service contracts. From this it argues the act is inapplicable to lease agreements between contractors of equal bargaining positions. We disagree.
The language used in enacting the Louisiana Oilfield Indemnity Act gave it the broadest possible meaning. Moreover, the Louisiana Oilfield Indemnity Act does not draw distinctions based on the net worth or ownership of the contracting parties or the type of contract involved. Rather, it nullifies completely any provision in any agreement pertaining to wells for oil, gas or water that requires indemnification where there is any negligence or fault on the part of the indemnitee. See Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987). The final sentence of paragraph C of the Louisiana Oilfield Indemnity Act specifically includes the furnishing of rental equipment in connection with testing services or operations. In our view the Louisiana Oilfield Indemnity Act is applicable in the present case and does serve to invalidate the indemnity clause of the lease agreement.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.