544 So.2d 28 (1989)
Lascelles MURRAY
v.
TRUNKLINE GAS COMPANY, First Horizon Insurance Company, Performance Marine, Inc., the ABC Insurance Company, and John Doe.
No. 88-CA-2014.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1989.
*29 Leon A. Aucoin, Frank M. Buck, Jr., Metairie, for plaintiff/appellant.
S. Gene Fendler, R. Keith Jarrett, New Orleans, for defendants/appellees.
Before GARRISON, ARMSTRONG and BECKER, JJ.
BECKER, Judge.
Cross-claim defendant-appellant, First Horizon Insurance Company, appeals the granting of a summary judgment in favor of defendant-appellee, Trunkline Gas Company. The trial court, in granting the summary judgment, determined that the Louisiana Oilfield Anti-Indemnity Act was not applicable to the contract between Trunkline Gas Company and First Horizon's insured, Cooper Brothers Welding Services, Inc., therefore making Trunkline an additional insured under the policy issued by First Horizon to Cooper Brothers.
The plaintiff, Lascelles Murray, filed a tort action to recover damages for injuries sustained on December 15, 1985 while in the employ of Cooper Brothers Welding Services, Inc. Plaintiff was working aboard a fixed platform owned and operated by Trunkline Gas Company. Trunkline cross-claimed against plaintiff's employer, Cooper, and Cooper's insurer, First Horizon, alleging that Cooper had an obligation to indemnify and defend Trunkline under its contract. Trunkline further alleged that the contract required Cooper to name *30 Trunkline as an additional insured under the policy Cooper had with First Horizon.
First Horizon and Cooper filed a motion for summary judgment arguing that the Oilfield Anti-Indemnity Act (LSA-R.S. 9:2780) nullified the defense and the indemnity provisions of the contract. Appellants further argued that the statute also nullified the provision in the contract which allegedly required Cooper to name Trunkline as an additional insured. The trial court granted the motion for summary judgment as to Cooper but denied the motion as to First Horizon concluding that First Horizon, as Cooper's insurer, could not benefit from the statute. That judgment was signed on June 26, 1987.
First Horizon then filed an application for supervisory writs to this Court seeking relief from the denial of its motion for summary judgment. This Court granted appellant's writ application on November 24, 1987. In its response to First Horizon's application for writs, Trunkline, for the first time, argued that its action on the platform were not covered by the Anti-Indemnity Act. This Court declined to address this argument as Trunkline failed to raise this issue at the trial court level.
Subsequently, the trial court rendered a judgment on December 8, 1987 wherein it considered all issues pertaining to Cooper as being final, and granted First Horizon's motion for summary judgment dismissing Trunkline's claims against it.
Trunkline filed a motion for a new trial on December 15, 1987 requesting the trial court to vacate its previous judgments in favor of Cooper and First Horizon to consider newly discovered evidence that its activities aboard the platform in question were not covered by the Oilfield Anti-Indemnity Act. The trial court granted Trunkline's motion for a new trial and vacated the judgments previously rendered in favor of Cooper and First Horizon.
On January 15, 1988, First Horizon and Cooper filed an application for supervisory writs with this Court seeking review of the trial court's granting of Trunkline's motion for a new trial. The Court granted the writ application, and reversed in part and affirmed in part. This Court held that the judgment in favor of Cooper was final in these proceedings and reversed the trial court's order to vacate. However, this Court did affirm the part of the district court's order granting Trunkline a new trial as to Trunkline's claims against First Horizon, 524 So.2d 112.
Trunkline then filed a motion for summary judgment contending that it was entitled to judgment in its favor as a matter of law because its activities aboard the platform were not within the scope of the Oilfield Anti-Indemnity statute, therefore making the Act inapplicable to the contract between it and Cooper. First Horizon filed an opposition to Trunkline's motion as well as its own motion for summary judgment, arguing that Trunkline's activities aboard the platform were within the scope of the Act.
On June 3, 1988, the trial court heard both motions. In its judgment, rendered on June 6, 1988, the trial court denied First Horizon's motion and granted Trunkline's motion for summary judgment. The trial court held that the contract between Trunkline and Cooper which required Cooper to obtain an insurance policy that named Trunkline as an additional insured was outside the scope of the Louisiana Oilfield Anti-Indemnity Act as Trunkline was a gas transportation company and was not involved in the production and/or exploration of minerals.
First Horizon now appeals the judgment of the trial court granting Trunkline's motion for summary judgment, arguing that the trial court erred in finding that contract between Cooper and Trunkline outside of the scope of the Louisiana Oilfield Anti-Indemnity Act, LSA-R.S. 9:2780. First Horizon contends that Trunkline's activities aboard the platform in question are within the scope for coverage provided in the statute.
LSA-R.S. 9:2780 (also known as the Oilfield Anti-Indemnity Act) provides, in pertinent part,
"B. Any provision contained in, collateral to, or affecting an agreement pertaining *31 to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement," as it pertains to a well for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or service or any act collateral thereto, including the furnishing of rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation." (emphasis added).
At issue is whether this statute applies to the contract existing between Cooper and Trunkline. The contract required Cooper to provide welding services upon one of Trunkline's stationary platforms on the Outer Continental Shelf off of the coast of Louisiana. Trunkline contends that the platform in question is a valving platform which services a natural gas pipeline owned by Trunkline. Trunkline further contends that it does not produce any of the gas that is transported through the pipeline serviced by the platform.
Section C of the statute clearly provides that any agreement which concerns any operations relating to the transportation of gas is within the scope of the statute. The agreement between Cooper and Trunkline requires welding on a platform which assists in the transportation of gas.
Trunkline relies upon Griffin v. Tenneco Oil Company, 519 So.2d 1194 (La.App. 4th Cir.1988), writ denied, 521 So.2d 1154 (La. 1988) and Clarkco Contractors, Inc. v. Texas Eastern Gas Pipeline Company, 615 F.Supp. 775 (M.D.La.1985) in support of its contentions. However, both Griffin and Clarkco are distinguishable from the case at bar. In Griffin, supra, the contract in question was an agreement to provide electrical services at a petroleum refinery. The statute does not refer to agreements concerning any operations relating to the refining of oil. The statute, though, does provide coverage for any agreement concerning any operations relating to the exploration, development, production or transportation of oil, gas, or water. In the present case, the contract is an agreement for the performance of welding services upon a stationary platform which assist in the transportation of gas. Said contract is clearly within the scope of the statute.
In Clarkco, supra, while the contract in litigation related to work to be performed on a natural gas transmission pipeline, the pipeline was landbased. In the case at bar, the platform is located on the Outer Continental Shelf and is connected to wells producing hydrocarbons through Trunkline's pipeline. Further, Jerry Mohn, Trunkline's administrative superintendent, testified at his deposition that nothing is done to the hydrocarbon until it reaches onshore facilities. Clearly, the activities of Trunkline include the transportation of gas. The platform in question is an integral part of the transportation system.
As the contract concerns operations relating to the transportation of gas, the *32 Anti-Indemnity Act is applicable to the case at bar. The defense and indemnity provisions of the contract are therefore prohibited and void. Cooper has no obligation to defend or indemnity Trunkline in this litigation.
Further, as an insurer can only be obligated to pay for those obligations its insured is legally required to pay, and since the defense provisions in the contract are void, there is no obligation upon First Horizon to provide a defense or coverage to Trunkline.
Trunkline further argues that First Horizon is still responsible to Trunkline for defense and coverage as the contract also required Cooper to name Trunkline as an additional insured on its liability insurance policy. Trunkline concedes that while the Anti-Indemnity statute may void the defense and indemnification provisions of the contract, the Act has no effect on the other provision of the contract. We disagree. The statute clearly provides that it nullifies any provision in any agreement that requires indemnification where there is any negligence or fault on the part of the indemnitee. See Meloy v. Conoco Inc., 504 So.2d 833 (La.1987); St. Amant v. Glesby-Marks Corp., 532 So.2d 963 (La.App. 5th Cir.1988).
The insurance policy issued to Cooper provides,
"It is understood and agreed that, if required by written contract, any person, firm or organization is/are included as an additional named assured in connection with respect to work performed by the named insured."
Thus, in order for Trunkline to become an additional insured, such status must be conferred through the contract. However, the only provisions concerning Trunkline's right to be covered under Cooper's insurance policy are the provisions on defense and indemnification. As we have held these provisions void, there are no requirements in the contract providing for Trunkline to be an additional insured under the insurance policy issued to Cooper by First Horizon.
Accordingly, the trial court erred in granting Trunkline's motion for summary judgment. The judgment of the trial court is reversed. First Horizon's motion for summary judgment is hereby granted. Trunkline's claims against Cooper and First Horizon are dismissed.
REVERSED AND JUDGMENT REDERED.