609 So.2d 312 (1992)
Vernon HUTCHINS, Plaintiff-Appellee,
v.
HILL PETROLEUM COMPANY & Saloman Brothers, Inc., Defendant-Appellant.
No. 91-365.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1992.
*313 Goode, Skinner & Shullaw, Wayne A. Shullaw, for defendant-appellant in No. 91-365.
LaBorde & Neuner, Robert E. Torian, James L. Pate, Lafayette, for defendant-appellant in No. 92-357.
Joseph F. Gaar, Wm. Hawkland, Lafayette, for plaintiff-appellee.
Pucheu & Pucheu, Jacque B. Pucheu, Eunice, for Artigue Const.
Juneau, Judice, Hill & Adley, Kraig T. Strenge, Lafayette, for defendant-appellee Hill Petroleum.
Before DOMENGEAUX, C.J., GUIDRY and YELVERTON, JJ., and COREIL and PATIN, JJ.,[*] Pro Tem.
JOSEPH E. COREIL, Judge, Pro Tem.
This appeal arises from the following set of facts: Vernon Hutchins (Hutchins) worked as a maintenance laborer for Artigue Construction Company (Artigue), which had a contract with Hill Petroleum Company, Inc. (Hill) to maintain Hill's refinery facility at its St. Rose location[1]. Hutchins was injured when loading and unloading oxygen cylinders onto the back of a Ranchero vehicle leased by Hill. Hutchins filed suit against Hill alleging that due to Hill's negligence, the Ranchero's tailgate gave way, causing Hutchins to suffer injuries to his back.
Hill filed a third party demand against Artigue, alleging that Hill was entitled to complete indemnification from Artigue pursuant to the terms of the contractual agreement for plant maintenance between Hill and Artigue. Specifically, Hill alleged that Artigue breached the "hold harmless" provision, which contained an indemnification clause and an "insurance coverage" clause by failing to have Hill named as an additional insured.
*314 Artigue joined its insurer, the Dupre-Carrier-Godchaux Insurance Agency, and agent, Harold Carrier, as third party defendants on the basis that the insurance agency failed to include Hill as an additional insured. In Hutchins' claim against Hill, the issue of causation, liability, and damages was severed from the contractual claims by Hill and against Artigue and was tried by a jury. The contractual claim by Hill against Artigue was tried by the court. The third party demand of Artigue against its insurer and agent was also severed and tried separately. Appeal was taken and consolidated with this appeal. A separate opinion with regard to that appeal is being rendered this date (Hutchins v. Hill, 609 So.2d 306 (La.App. 3 Cir.1992)).
A jury trial on the merits of the main action resulted in a judgment in favor of Hutchins against Hill. The jury found Hutchins was not the statutory employee of Hill and awarded Hutchins damages for Hill's negligence.
The trial of Hill's third party demand against Artigue before the trial judge resulted in a decision that Hill's claims against Artigue were barred by La.R.S. 9:2780, the Louisiana Oilfield Indemnity Act.[2] Therefore, Artigue had no duty to indemnify Hill for damages sustained by Hutchins. The order issued by the trial judge dismissed not only Hill's claim for indemnification, but all incidental claims by Hill.
Hill appeals from the trial judge's decision on the third party demand. Artigue, Harold Carrier, and Dupre-Carrier-Godchaux answered the appeal.
The substantive issues are: (1) whether the jury verdict was manifestly erroneous in its determination that Hutchins was not a statutory employee of Hill and, (2) whether the trial judge erred in applying the Louisiana Oilfield Indemnity Act to the operation of refineries.
In addressing the first issue, the jury specifically answered the following question in the negative: "Was Vernon Hutchins the `statutory employee' of Hill Petroleum Company at the time of the accident on November 4, 1987?"
Artigue, Harold Carrier, and Dupre-Carrier-Godchaux challenged that finding. Mindful of our duty as a reviewing court under Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), we agree with Artigue, Harold Carrier, and Dupre-Carrier-Godchaux. After a thorough review of the factual findings of the jury, we find from the record that there is no reasonable factual basis for the finding that no statutory employer-employee relationship existed between Hutchins and Hill.
The Louisiana Worker's Compensation Act provides the exclusive remedy for employees who sustain injuries arising out of and in the course and scope of their employment. La.R.S. 23:1021, et seq. The statute further extends tort immunity beyond the employee's immediate employer to one who satisfies the statutory employment relationship. La.R.S. 23:1061. Under certain circumstances, employees of contractors are considered to be the employees of the owner or principal.
La.R.S. 23:1061 was amended in 1989.[3] Prior to that amendment, the Supreme *315 Court, in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), developed a three-step test for determining whether statutory employment existed between an employee of a contractor and the principal:
"(1) Is the contract work specialized? If so then as a matter of law the contract work is not part of the principal's trade, business, or occupation and the principal is not the statutory employer of the contractor's employee.
(2) If the contract work is nonspecialized, compare the contract work to the principal's trade, business, or occupation to determine if the contract work can be considered part of the principal's trade, business, or occupation.
(3) If the contract work is part of the principal's trade, business, or occupation, was the principal engaged in the contract work at the time of the injury."
The amendment legislatively overruled Berry. It broadened the reach of the statutory employment language, creating a more liberal standard of tort immunity.
We must first determine whether the amendment is to be given retroactive effect. In Fountain v. Central Louisiana Elec. Co., 578 So.2d 236 (La.App. 3 Cir. 1991), writ denied, 581 So.2d 707 (La.1991), Chief Judge Domengeaux stated in his concurrence, at page 239:
"...
However, I think it should be mentioned that by Acts 1989, No. 454, effective January 1, 1990, the Legislature amended La.R.S. 23:1061(A), apparently overruling Berry and much of the other jurisprudence defining `trade, business, or occupation.' Considering the sweeping change this amendment makes in our *316 prior law, I think it is clearly substantive and should not be applied retroactively. I am, therefore, writing to expressly disagree with the holding of the Federal Eastern District in Brock v. Chevron Chemical Company, 750 F.Supp. 779 (E.D.La.1990)."
This reasoning was recently adopted when the issue was squarely addressed by the Fourth Circuit in Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4 Cir.1992). Therefore, in line with the above, the 1989 amendment is given prospective application only.
The determination of whether a statutory employer relationship exists between a contractor and employee of a subcontractor is primarily a factual issue that must be decided on a case-by-case basis. Lewis v. Exxon Corp., 441 So.2d 192 (La. 1983). The facts presented in the present case are analyzed in accordance with the intent and purpose of the statutory employer provision as it existed prior to the 1989 amendment. In resolving this question, the Court must consider the entire scope of the work contract, not merely the specific task to which the injured employee was assigned. Lewis, id., at 199.
Applying the Berry analysis, the first step is to determine whether the contract work is specialized or non-specialized. Courts should consider whether the contract work requires a degree of skill, training, education, and/or equipment not normally possessed by those outside the contract field. Berry, supra, at 938.
Hill's trade, business, or occupation is the operation of a refinery. Hill entered into a lease agreement in 1986 with PRI Petroleum, Inc. wherein Hill would start up the plant, make improvements, and operate the refinery. As part of this process, Hill hired its own maintenance people as well as a maintenance crew contracted from Artigue Construction.
Artigue furnished five employees, one of which was Hutchins, to remain at the refinery on a permanent basis to work along with Hill's maintenance department. Although Hutchins had welding skills, Harvey LeBlanc, maintenance superintendent of Artigue, testified that he hired Hutchins as a maintenance worker for this particular plant. LeBlanc did admit that Hutchins' ability to weld helped him get the job. Nevertheless, though Hutchins is considered a welder by craft, he performed welding only 10% to 20% of the time.
At this operation, Artigue's employees were never relegated to performing strictly within their craft. Artigue's employees were basically doing manual labor. Regardless, the specific task to which an individual employee is put should not be determinative of his coverage under the Act. Berry, supra, at 937. All five of Artigue's employees painted, picked up garbage, dug ditches, and swept roads alongside Hill's maintenance crew.
We recognize that in some cases routine maintenance activities may not be within the skill, training, or expertise of a principal's employee and therefore considered non-specialty cases. See discussion in Rowe v. Northwestern National Ins. Co., 471 So.2d 226 (La.1985). However in this particular situation, a maintenance worker can be a welder, a pipefitter, as well as a painter or a ditch digger. Therefore, it is our conclusion that this contract work does not require a degree of skill, training, experience, education, and/or equipment not normally possessed by those outside the contract field. In other words, under the facts of the present case, the work performed by Artigue's crew was non-specialized.
Having decided the work was non-specialized, we reach the second level of the Berry test which requires a determination regarding whether the contract work could be considered part of Hill's trade, business, or occupation. Normally, for work to be considered within a principal's trade, business, etc., it must be routine, customary, or at least, an activity that is necessarily part of day-to-day operations, rather than extraordinary or non-recurring activities. Cantrell v. BASF Wyandotte, 506 So.2d 793 (La.App. 1 Cir.1987), writ denied, 512 So.2d 1178 (La.1987). This type of maintenance and repair work which, by their nature, allows the smooth and continuing operations *317 of the principal, is part of the trade, business, or occupation of the principal. See Lewis, supra, at 198; Berry, supra, at 938; Malone, Principals Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). Hill employed its own maintenance supervisor, Roger Esteves, and maintenance crew. Esteves issued the work orders and delegated maintenance workers from both the Artigue crew and the Hill crew to do certain jobs. No Artigue supervisors were at the plant site, and the Artigue employees understood that their work was at the direction of Esteves.
Considering the scope of the contract, that is, to maintain the refinery and its premises, we must conclude that Hutchins' job was a part of Hill's trade, business, or occupation at the time of the alleged injury.
We consider this inquiry to be relevant also to the third level of the Berry analysis, namely, to determine if the principal is engaged in the work at the time of the alleged accident. Although the contract work may customarily be considered part of a principal's trade, business, or occupation, if at the time of the alleged injury the principal had no employees doing work similar to the contract work, then the contract work will not be considered part of the principal's trade, business, or occupation as of the time of the injury. See Holmes v. St. Charles General Hosp., 465 So.2d 117 (La.App. 4 Cir.1985), cited with approval by the court in Berry. The evidence in the record leaves no doubt that Hill was engaged in the work at the time of the injury.
Considering the facts in the record and applying the analysis previously set forth, it is clear that Hill was the statutory employer of Hutchins. Consequently, Hill is protected by the exclusive remedy rule of the worker's compensation statute. The jury's conclusion that Hutchins was not a statutory employee of Hill is manifestly erroneous. Accordingly, and for the foregoing reasons, the judgment of the trial court is reversed.
The second issue on appeal is whether the Louisiana Oilfield Indemnity Act applies to Hill's activities in operating a refinery. Although it is not dispositive in view of the above, we feel it necessary to address this issue. The Act provides, in part:
"A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term `agreement,' as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including *318 but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation."
The indemnity agreement at issue is contained in the labor contract between Hill and Artigue. Artigue argues that the statute does apply because refining is "related to the exploration, development, production, or transportation of oil, gas, or water..." We disagree. Our interpretation is supported by the Fourth Circuit's decision in Griffin v. Tenneco Oil Co., 519 So.2d 1194 (La.App. 4 Cir.1988), writ denied, 521 So.2d 1154 (La.1988), and the cases cited therein. The facts and issues are practically identical to those in the case at bar. In Griffin, MRO Services entered into an agreement with Tenneco Oil Company which required MRO to defend and indemnify Tenneco against any and all causes of action asserted by plaintiff in that case. The injuries were sustained as a result of a fire at Tenneco's Chalmette refinery. Plaintiff was an employee of MRO, working at the refinery pursuant to a contract between MRO and Tenneco whereby MRO agreed to perform certain electrical services at the refinery. Tenneco filed a third party demand against MRO for contractual indemnity. Summary judgment was granted in Tenneco's favor. MRO appealed, contending that the Louisiana Oilfield Indemnity Act voids the indemnity provisions in the Tenneco-MRO contract. On appeal, the court held that the statute did not apply to the agreement to perform electrical services at a petroleum refinery.
That case is well reasoned and worth reading, and we quote a pertinent passage:
"The statute repeatedly refers to agreements `pertaining to a well [or wells] for oil, gas or water or drilling for minerals.' The Tenneco-MRO contract is clearly not an agreement relating to wells or drilling. Refining operations are not mentioned anywhere in the statute, although the Legislature could have easily included such operations had it wanted to do so. In our view, the recurring reference to wells and drilling combined with the rather general language relied upon by MRO makes the statute ambiguous.
According to the Civil Code, when the words of a law are dubious, its meaning may be ascertained by examining the context in which the words are used (Article 16) or by considering the intent of the Legislature in enacting the law (Article 18). Although the phrase `operations related to the ... development [or] production... of oil, gas or water,' if interpreted in the very broadest sense, could conceivably include refining, a reading of the statute as a whole convinces us that this was not the Legislature's intent. In Clarkco Contractors v. Texas Eastern Gas Pipeline, 615 F.Supp. 775 (M.D.La. 1985), the federal court, in order to rule on a motion to transfer the case to Texas, had to decide whether the Louisiana Anti-Indemnity Statute would void the indemnity provision in a maintenance and repair contract between a natural gas transmission company and a pipeline contractor. Using a similar analysis, the court stated:
The `cause' which induced the Louisiana Legislature to enact the statute is found in Subsection A, an inequity, `contained in some agreements pertaining to wells for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state.'
. . . . .
... The question here, is whether the Louisiana Legislature intended this anti-indemnity statute to include contracts pertaining to natural gas transmission *319 pipelines when the contract does not pertain to `wells for oil, gas, or water, or drilling for minerals.'
Subsection C of the statute defines `agreement' as `any agreement ... concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals ... including but not limited to drilling [here follows a long list of other well drilling activities] ..., or, otherwise rendering services ... in connection with any well drilled ..., or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral ...' (Emphasis supplied). A literal application of the words `transportation of oil, gas, or water' would include every train with tank cars of crude oil, refined products or natural gas, every ship carrying any such product into or out of a Louisiana port, every barge load of those products on the Mississippi, the Intercoastal Waterway or other navigable streams, and every truck load of such products upon the highways, even bottled water being hauled to communities with bad tasting water, such as New Orleans. Since the Legislature has consistently used the words contracts pertaining to wells for oil, gas, or water, or drilling for minerals, I am persuaded that the Legislature intended to include only transportation contracts pertaining to wells or drilling for minerals.
... This contract, which relates to work to be performed upon an interstate natural gas transmission pipeline, is not an agreement `pertaining to wells, for oil, gas, or water, or drilling for minerals and the statute does not apply to it.
615 F.Supp. at 780-81 (Emphasis in the original).
Although MRO dismisses the Clarkco decision as `dicta,' we find the court's reasoning to be sound. The Legislature was obviously concerned about wells and drilling, not about pipeline transportation or refining of oil, and this concern is reflected in the statute. We will not extend the scope of the statute beyond the legislative intent by broadly interpreting an isolated phrase. We therefore conclude that the Anti-Indemnity Statute does not apply to the Tenneco-MRO agreement."
We find this interpretation gives full effect to the legislative intent as well as it comports with logic and reason. We have not overlooked the extensive arguments to the contrary, but are not persuaded thereby.
Therefore, we find the trial judge erred in superimposing a meaning upon the Louisiana Oilfield Indemnity Act not intended by the legislature.
For the foregoing reasons, the judgment of the trial court is reversed. In so reversing, the third party demands of Hill against Artigue are moot. The judgment dismissing Hill's claims in that third party demand remains intact, but for the reasons consistent with this opinion. Costs of this appeal are assessed equally between the parties to this appeal.
REVERSED.
DOMENGEAUX, C.J., dissents and assigns written reasons.
YELVERTON, J., dissents for the reasons assigned by DOMENGEAUX, C.J.
DOMENGEAUX, Chief Judge, dissenting.
I respectfully dissent from the majority's reversal of the jury verdict on the statutory employment issue. The question of statutory employment is a factual one which should not be disturbed on appeal absent manifest error. Lewis v. Exxon, 441 So.2d 192 (La.1983). The facts show that Hutchins was a welder by trade, although he performed some maintenance work as did the other members of Artigue's crew. See Fuselier v. Amoco Production Co., Inc., 607 So.2d 1044 (La.App.1992), where we held that an employee with specialized training was not a statutory employee, even though he performed some routine *320 maintenance duties and was in fact doing so at the time of his accident. I find no basis in the record for reversal of the jury's verdict.
I also disagree with the majority's discussion of the Louisiana Oilfield Anti-Indemnity Act, particularly as that portion of the opinion is merely dicta in light of the majority's resolution of the statutory employment issue.
The majority has adopted with little comment the Fourth Circuit's holding in Griffin v. Tenneco Oil Co., 519 So.2d 1194 (La.App. 4th Cir.1988), writ denied, 521 So.2d 1154 (La.1988) [with Chief Justice Calogero and Justice Watson voting to grant] that the Anti-Indemnity Act does not apply to contracts involving refining activities. The two-part rationale of Griffin is that such contracts are not "pertaining to a well for oil, gas, or water ..." and that refining activities are not mentioned in the statute. I would submit that the interpretation in Griffin is a constrained, narrow one that may follow federal jurisprudence but is nonetheless out of line with Louisiana jurisprudence.
Although the statute initially refers to "agreement[s] pertaining to a well for oil, gas, or water, or drilling for minerals" in Subsections A and B, that phrase is later repeated and defined in Subsection C as "any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water...."
In Livings v. Service Truck Lines, Inc., 467 So.2d 595 (La.App. 3d Cir.1985), we held that the Anti-Indemnity Act applied to a contract for the testing of drill pipe, even though the pipe involved was not assigned to a specific well and might not have been used in any well. In Fuselier v. Amoco Production Co., 546 So.2d 306 (La.App. 3d Cir.1989), writ denied, 551 So.2d 630 (La. 1989), we held the act applied to a contract for maintenance services at a production site where raw product was treated but where there was no evidence of drilling activities. In Murray v. Trunkline Gas Co., 544 So.2d 28 (La.App. 4th Cir. 1989), writ denied, 547 So.2d 1317 (La.1989), the Fourth Circuit applied the act to a contract for welding services on a valving platform where no drilling or production activities took place.
None of the above contracts were "pertaining to a well for oil, gas, or water" in a literal sense. However, the courts turned to the explanatory language of Subsection C to find that the activities were related to "exploration, development, production, or transportation of oil, gas, or water" and were therefore covered by the act. As these cases illustrate, the quoted language in Subsection C is essential to a proper application of the statute and is not an "isolated phrase" as suggested in Griffin.
For the foregoing reasons, I would conclude that contracts for maintenance work at refineries are related to the "exploration, development, production or transportation" of oil and are therefore governed by the Anti-Indemnity statute.
I respectfully dissent.
NOTES
[*] HONORABLE JOSEPH E. COREIL, Retired, and HONORABLE JOHN A. PATIN, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] Hill was operating the refinery under lease with PRI Petroleum and Saloman Brothers, Inc. Both were named as defendants, but were subsequently dismissed from the proceedings.
[2] The official title of this statute is "Certain Indemnification Agreements Invalid"; however, it is widely known as the Louisiana Oilfield Indemnity Act and shall be referred to by that name in this opinion.
[3] Prior to the 1989 amendment, the statute read: "SECTION 1061. Principal contractors; liability

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnify from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
SECTION 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
La.R.S. 23:1061, as amended, provides:
"Section 1061. Principal contractors; liability
A. When any person, in this Section referred to as the `principal', undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the `contractor', for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work."