610 So.2d 883 (1992)
Jeffrey DAIGLE
v.
UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, M.J. Foster, and/or M.J. Foster Industries (Bayou Sale), and/or Bayou Sale Contractors, and/or Bayou Sale Contractors, Inc., Stanley Sullivan, and Amoco Oil Company and/or Amoco Production Company.
No. 91 CA 1589.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
*884 Stephen M. Morrow, Opelousas, for petitioner/plaintiff.
James B. Supple, Darnall, Biggs, Trowbridge, Supple & Cremaldi, Franklin, for USF & G, Murphy J. Foster, Jr. and Bayou Sale Contractors, Inc.
James H. Gibson, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Lafayette, for intervenors, Gray Ins. Co. and Gianfala & Son.
Robert P. McCleskey, Jr., New Orleans, for Amoco Production Co. and Amoco Oil Co.
Gregory J. Laborde, Lafayette, for Gianfala & Son, Inc.
Before WATKINS, CARTER and LeBLANC, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

FACTS
On or about December 1, 1969, Gianfala & Son, Inc. (Gianfala) entered into a "Well and Lease Service Master Contract" with Amoco's predecessor, Pan American Petroleum Corporation, to provide various services. Under the terms of the contract, Gianfala assumed all liability and agreed to defend, indemnify, and hold Pan American harmless from any loss resulting from injury or death to the employees of Gianfala or its subcontractors arising out of any operations conducted under the contract.[1]
On November 10, 1988, pursuant to this agreement, Jeffery Daigle, a roustabout on a painting crew for Gianfala, was working at the Amoco Production Field near Charenton, St. Mary Parish. On that day, Daigle and several other Gianfala employees were applying "Amoco grey" paint to a newly installed "heater treater," a device used to separate water from oil. In order to accomplish this task, Daigle was lifted thirty-five feet in the air in a work basket, which was suspended from the boom of a *885 crane owned by Bayou Sales Contractors, Inc. and operated by an employee of M.J. Foster, Jr., Inc. During the course of the painting operation, the crane and boom fell, causing the basket to fall to the ground. As a result of this accident, Daigle was seriously injured.
On November 10, 1989, Daigle filed suit against Amoco; M.J. Foster, M.J. Foster Industries (Bayou Sale), Bayou Sale Contractors, and/or Bayou Sale Contractors, Inc.; Stanley Sullivan, the crane operator; and USF & G, insurer of M.J. Foster, M.J. Foster Industries (Bayou Sale), and/or Bayou Sale Contractors, and/or Bayou Sale Contractors, Inc. In his petition, Daigle sought damages for personal injuries allegedly caused by the negligence of the various defendants. Daigle subsequently amended his petition to name as additional defendants, M.J. Foster, Jr. and M.J. Foster, Jr., Inc. On December 29, 1989, Gianfala and Gray Insurance Company, Gianfala's worker's compensation insurer, filed a petition of intervention seeking reimbursement for the worker's compensation and medical benefits paid to Daigle.[2]
On August 28, 1990, Amoco filed a reconventional demand against Gianfala claiming that, under the terms of a "Well and Lease Service Master Contract," Gianfala had assumed all liability for and agreed to defend, indemnify, and hold Amoco harmless from and against all claims such as those asserted by Daigle. Gianfala answered Amoco's reconventional demand contending that the provisions of the contract calling for indemnity and defense were null by operation of the Louisiana Oilfield Anti-Indemnity Act, LSA-R.S. 9:2780.
Thereafter, Amoco filed a motion for summary judgment on the issue of Gianfala's obligation to defend, indemnify, and hold Amoco harmless as described in the "Well Lease Service Master Contract." In support of its motion, Amoco attached an affidavit by Lucien Bullen, field foreman at the Amoco facility, and a copy of the "Well and Lease Service Master Contract." In opposition to Amoco's motion for summary judgment, Gianfala submitted the deposition of Mr. Lucien Bullen.
After a hearing, the trial court determined that the activity conducted by Gianfala fell outside the ambit of LSA-R.S. 9:2780. Accordingly, the trial court rendered judgment granting Amoco's motion for summary judgment and ordering Gianfala to defend and indemnify Amoco for all claims asserted in the litigation by Daigle. From this adverse judgment, Gianfala appeals contending that the trial court erred in granting Amoco's motion for summary judgment in that the trial court's construction of the Louisiana Oilfield Anti-Indemnity Act was impermissible in the following respects:
a. The Louisiana Oilfield Indemnity Act is designed to prevent the foistering of unfair indemnity obligations upon companies of inferior economic bargaining power;
b. The focus of the Louisiana Oilfield Indemnity Act should be on the contractual relationship between the oil company/producer and the contractor for the Act does not differentiate between the types of services that are provided by the contractor, as long as the contract itself relates to the exploration, development, production or transportation of oil, gas or water;
c. The painting operations conducted at the time of the accident herein were an integral part of the installation, operation and maintenance of the oil production facility, and thus within the ambit of the Act.

SUMMARY JUDGMENT
It is well settled that the granting of a summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, establish that there are no genuine issues of material fact *886 and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Caballero Planting Co., Inc. v. Hymel, 597 So.2d 35, 37 (La.App. 1st Cir.1992); Insley v. Titan Insurance Company, 589 So.2d 10,13 (La.App. 1st Cir.1991); Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). Summary judgment is appropriate only when reasonable minds must inevitably conclude that, on the facts before the court, the mover is entitled to judgment as a matter of law. Insley v. Titan Insurance Company, 589 So.2d at 13.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists and that, as a matter of law, summary judgment is warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d at 384. It is only after the moving party has shown that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law that the burden shifts to the party opposing the motion to come forward with specific facts establishing the existence of a genuine issue of fact for trial. Caballero Planting Co., Inc. v. Hymel, 597 So.2d at 37.
Amoco filed a motion for summary judgment asserting that the Louisiana Oilfield Anti-Indemnity Act, LSA-R.S. 9:2780, does not apply to the instant case and that Gianfala owes Amoco indemnification and a defense against the claims by Daigle.
As pointed out by the Louisiana Supreme Court in Meloy v. Conoco, Inc., 504 So.2d 833, 837 (La.1987), the Louisiana legislature passed LSA-R.S. 9:2780 in response to the concern of oilfield contractors over the widespread inclusion of indemnification agreement in the master service contracts which oil companies require all contractors to sign. These indemnification agreements exposed contractors to both worker's compensation and tort liability.
The intent and policy of the Louisiana legislature in enacting the Oilfield Anti-Indemnity Act is expressly set forth in the statutory provision, which provides as follows:
The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
LSA-R.S. 9:2780 A.
Stated more simply, the purpose of the legislation and the policy interest of the state, as noted by the Louisiana Supreme Court in Rodrigue v. LeGros, 563 So.2d 248, 254 (La.1990), is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence. The Louisiana Anti-Indemnity Act is an exception to the general Louisiana contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed. See Soverign Insurance Company v. Texas Pipe Line Company, 488 So.2d 982, 984-85 (La.1986).
LSA-R.S. 9:2780 B provides, in pertinent part, as follows:
Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or *887 bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
This section makes it clear that anti-indemnity agreements are voided only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee. Otherwise, they are enforceable as any other legal covenant. Meloy v. Conoco, Inc., 504 So.2d at 838.
The language used in enacting the Louisiana Oilfield Anti-Indemnity Act gave it the broadest possible meaning. St. Amant v. Glesby-Marks Corporation, 532 So.2d 963, 965 (La.App. 5th Cir.1988). Moreover, LSA-R.S. 9:2780 does not draw distinctions based on the net worth or ownership of the contracting parties or the type of contract involved. Rather, it nullifies completely any provision in any agreement pertaining to wells for oil, gas, or water that requires indemnification where there is any negligence or fault on the part of the indemnitee.[3]Fuselier v. Amoco Production Company, 546 So.2d 306, 307-08 (La.App. 3rd Cir.), writ denied, 551 So.2d 630 (La.1989); St. Amant v. Glesby-Marks Corporation, 532 So.2d at 965. Further, the Louisiana Oilfield Anti-Indemnity Act may be applicable to contracts for services which are not rendered at the site of or in physical connection with the drilling or operation of a specific well. LSA-R.S. 9:2780; Livings v. Service Truck Lines of Texas, Inc., 467 So.2d 595, 599 (La.App. 3rd Cir.1985).
In the instant case, the trial judge determined that the activities conducted by Gianfala fell outside the scope of the Act. Accordingly, he determined that Gianfala owed Amoco both a defense and indemnification. We disagree.
The deposition of Lucien Bullen revealed that the heater treaters were painted "for our appearance of our field and general upkeep of our field, and to save the value of your heater treater...." (emphasis added). Bullen further testified that all newly installed heater treaters were painted shortly after installation "[j]ust in general upkeep, if we scratch it with a little something... we scratch it in installation." Bullen acknowledged, however, that usually the heater treaters were not scratched and did not require touch-up paint. Based upon the record, Amoco painted the heater treaters, at least in part, to preserve the heater treaters. In Fuselier v. Amoco Production Co., 546 So.2d at 307-08, the court determined that cutting grass around the heater treater was essential maintenance in the operation of a production facility. The court concluded that the contract to perform such work was related to the production of oil and gas. Because the work performed by Gianfala's employees is in the nature of maintenance of an oil production facility, we cannot say, as a matter of law, that the Anti-Indemnity Act does not apply to the Gianfala-Amoco agreement. Accordingly, Amoco is not entitled to judgment as a matter of law. Therefore, we find that the trial court erred in granting Amoco's motion for summary judgment. See Caballero Planting Co., Inc., v. Hymel, 597 So.2d at 37-38.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed, and this matter *888 is remanded to the trial court for further proceedings consistent with the views expressed herein. Amoco is cast for all costs.
REVERSED AND REMANDED.
NOTES
[1] Paragraph 10 of the contract provided, in pertinent part, as follows:

In order to eliminate controversies between Contractor, its Subcontractors and Pan American and its joint owners, if any, and their respective insurers, Contractor assumes all liability for and hereby agrees to defend, indemnify and hold Pan American, its joint owner or owners, if any, and their insurers, harmless from and against any and all losses, costs, expenses and causes of action, including attorney's fees and court costs, for injuries to and death of Contractor's and its Subcontractor's employees, arising out of, incident to, or in connection with any and all operations under this contract and whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of Pan American, its joint owner or owners, if any, and its agents, representatives and employees. Contractor agrees to insure this assumption of liability.
[2] By judgment dated April 10, 1990, the claims by Daigle, Gianfala, and Gray against M.J. Foster, M.J. Foster, Jr., Bayou Sale Contractors, and M.J. Foster Industries (Bayou Sale) were dismissed with prejudice.
[3] LSA-R.S. 9:2780 C defines agreement as [A]ny agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.