467 So.2d 850 (1984)
Alvin J. DUVALLE, Jr.
v.
LAKE KENILWORTH, INC. et al.
Nos. CA 1690, CA 1691.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1984.
Rehearings Denied May 6, 1985.
Writ Denied June 28, 1985.
James S. Quinlivan, Jr., River Ridge, for plaintiff.
Terry J. Freiberger, Montgomery, Barnett, Brown & Read, New Orleans, for defendant.
Jack W. Thomson (Coleman, Dutrey & Thomson), New Orleans, for intervenors.
Before REDMANN, C.J., and CIACCIO, JJ.
REDMANN, Chief Judge.
When a 461-unit apartment complex obliges itself towards its tenants and its federal mortgage subsidizer to "make arrangements for," or to provide, pest control in each apartment, does it thereby, within the workers' compensation law, La.R.S. 23:1061, "undertake to execute any work, which is a part of [its] trade, business or occupation or which [it] had contracted to perform ..."?
We answer no. We reason that an apartment complex does not undertake to execute any work by the mere fact of a contractual obligation to arrange for or provide pest control. The apartment complex's only contractual undertaking is that pest control service will be provided and without cost to the tenants, not that it will "execute any work," that is, itself perform the service. We view an apartment complex's obligation to provide pest control service as similar to an apartment complex's obligation to provide utilities. By leasing for stated rents, "utilities included," the apartment complex does not oblige itself to generate and distribute electricity but only to pay for it: it does not make the generation of electricity part of its business *851 and it has not "contracted to perform" the generation or physical delivery of electricity.
The apartment complex would therefore not be liable as a "principal" under R.S. 23:1061 for workers' compensation to an employee of the utility company for injury arising out of and in the course of supplying electricity to the apartments. By the same reasoning, if the only basis for liability is a simple contractual obligation to its tenants and its federal subsidizer to "make arrangements for" or provide pest control service in the apartments, an apartment complex is equally not liable as a principal for workers' compensation to an employee of its pest control service company for injury arising out of and in the course of supplying pest control to the apartments.
Because that is the only record basis for deeming defendant apartment complex a principal, we reverse the trial court's dismissal on grounds of exclusivity of compensation, R.S. 23:1032, of plaintiff pest control company employee's tort action.
Defendant apartment complex contracted with plaintiff's employer to provide pest control service to its apartments. Plaintiff's suit against the complex for injuries from tripping on loose carpeting was first dismissed by summary judgment in the district court and weon the basis that the complex's contract with its tenants made pest control "work ... it had contracted to perform" and therefore made defendant plaintiff's statutory employeraffirmed, 383 So.2d 408 (La.App. 4th Cir.1980). Without rejecting that basis as we now do, the supreme court reversed and remanded for trial, 396 So.2d 1268 (La.1980).
After trial, the district court again dismissed, on the basis that the plaintiff's employer's pest control spraying (of the entire complex, including each separate apartment, every month) "was work which [the complex] had contracted with the Department of Housing and Urban Development to perform" within R.S. 23:1061, as a consequence of which the complex was plaintiff's statutory employer, immune to tort liability to plaintiff. Plaintiff now appeals that judgment.
The testimony by a HUD official is that HUD requires a "vermin extermination" clause in the contract documents. The wording of the documents in evidence is that owner's "agent will make arrangements for ... vermin extermination." We add that there is also uncontradicted defense testimony that "when someone rents... we inform them that the apartment will be exterminated [sic] once a month. In many cases the new resident will ask us if we have extermination.... [W]e do tell them it will happen once a month." Thus, notwithstanding the absence of this representation from the written lease, the complex did expressly though orally undertake towards its tenants, as well as towards HUD, to provide pest control.
The complex's rental director testified that the complex employees did some pest control work, in dealing with spiders and other bugs drawn to lights in interior hallways and in any special problems in vacant apartments, and in burning wasp nests. He also testified that some other apartment complexes do all necessary pest control work with their own employees.
"Courts must look to the facts of each individual case to determine whether a particular activity is within the scope of a principal's trade, business or occupation." Lewis v. Exxon Corp., 441 So.2d 192, 198 (La.1983). The facts of this case do not establish that pest control is an integral part of the business of renting apartments (as it is of the rice warehouse business, Meche v. Farmers Drier and S. Co., 193 So.2d 807 (La.App. 3 Cir.1967), writ refused 250 La. 369, 195 So.2d 644; and as are "repair and maintenance services performed regularly ... an essential and integral part" of the oil and gas production, processing and distribution business, Barnes v. Sun Oil Co., 362 So.2d 761, 764 (La.1978)). Furthermore, defendant did not prove that it in fact so conducted its business as to make pest control part of it. Defendant did prove that some apartment complexes do make pest control a part of *852 their business operation, but not that defendant did so. Defendant also proved that it contracted with HUD that it would "make arrangements for" pest control, and that it contracted with its tenants to provide pest control. But it did not show that it contracted that it would itself perform the service, and it in fact provided the service by contracting with a licensed pest control company, whose employee spent about one week each month in performing the service, and not by training its own employees in the selection and application of the proper chemicals, etc., and having them do the work.
Defendant has not proved that that it "undert[ook] to execute any work, which is a part of [its] trade, business or occupation or which [it] had contracted to perform...," and contracted with plaintiff's employer to do that work. It has not proved that it is the statutory employer of plaintiff. Its defense of exclusivity of workers' compensation must therefore be rejected.
Plaintiff's basic factual allegation is that, while applying pest-control chemicals from a spray-can at defendant's apartment complex, he injured his knee by falling after tripping on hallway carpeting that had become unglued. The question of whether defendant is liable in tort to plaintiff in this case depends, to an extreme degree, on an evaluation of plaintiff's credibility. Plaintiff's alleged accident was unwitnessed; it was immediately reported to defendant, but defendant says a fall down a stairway was reported; there are other discrepancies in plaintiff's testimony. Our review suggests that a trier of fact who heard and observed plaintiff might believe or disbelieve him, depending on indescribable and unquantifiable intuitive factors that might or might not satisfy the hearer-observer of his veracity. Ordinarily, in compliance with Louisiana's practice, we would undertake the evaluation of witness credibility as well as we could, and render a judgment based upon it, thus making our judgment the final one in the case. In this case, however, because the parties stipulated to a separate trial of liability and quantum, if we were to believe plaintiff we would still have to remand the matter. In effect, we would make a credibility evaluation only for the purpose of deciding whether the trial judge should conduct a quantum trial at which he would have to make, in large measure, the same credibility evaluation. We deem it both sound judicial economy and sounder administration of justice, under the circumstances of this case, to permit the trial judge to make that credibility evaluation, in order to decide whether or not he needs to proceed to trial on the quantum question.
Reversed; remanded for further proceedings consistent with this opinion; costs to await final outcome.

ON APPLICATIONS FOR REHEARING
Defendant's application for rehearing complains that we failed to either follow or overrule Highlands Insurance Co. v. United States F. & G. Co., 381 So.2d 1257 (La.App. 4 Cir.1980), arguing that its reasoning conflicts with that of this case interpreting La.R.S. 23:1061's "contracted to perform" clause.
La.R.S. 23:1061 makes a "principal" liable in workers' compensation (and not in tort) towards employees of his "contractors" under specified circumstances, the first of which is:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform...." (Emphasis added.)
Malone, "Principal's Liability for Workmen's Compensation to Employees of Contractor," 10 La.L.Rev. 25, 27-28 (1949), in interpreting this language, writes:
"[A] principal is any person who undertakes to carry out any work which is a part of his trade, business or occupation, by means of a contract with another; or any person who has contracted to perform work and sub-lets any portion of it to another....
"Louisiana courts have conclusively adopted the position that [§ 1061] embraces *853 the principal-contractor relationship as well as the relation of contractor and sub-contractor although there has been occasional dissent both in the courts of appeal and in the supreme court. The majority position seems clearly correct. No other interpretation could be made without violence to the language of this section when taken in its entirety...." (Emphasis added.)
The quoted part of the statute governs two different factual situations.
One is the case of the person who, not because he is obliged by contract to a third party to do something but merely because he wants it done for his own purposes, employs a contractor to do it. If "it" is "part of his trade, business or occupation," he is a "principal" and owes workers' compensation to the contractor's employees. Lewis v. Exxon, 441 So.2d 192 (La.1983), and Benson v. Seagraves, 436 So.2d 525, 529 (La.1983), apparently limit the statutory "part of his trade, business or occupation" to work that is customarily performed by employees of the principal. (But see Barnes v. Sun Oil Co., 362 So.2d 761, 764 (La.1978).) On their facts, however, Lewis and Benson are not cases of "work, ... which [the principal] had contracted to perform" for a third person, and therefore they do not purport to govern that category of case. (In Lewis, Exxon had not "contracted to perform," that is, Exxon was not contractually obliged towards a third person to perform the conversion of its own ethanol producing facility into an isopropanol facility. Exxon was converting its own facility for its own use. Similarly, in Benson, Jefferson Davis Electric Cooperative had not "contracted to perform," had not contracted to build a transformer substation for any third person. It wanted the substation for itself, for its own use in providing electricity to its customers.)
The second factual situation governed by the statute is the case of the person who contracts to perform some work for a third person, and then contracts for (sub)contractors to do all or part of the actual work. The standard example is the "general contractor" who uses subcontractors to build the building he agreed to build for an owner. Such a "general contractor" might have no employees, but ("without violence to the language," to use Malone's words) he could not escape liability for workers' compensation to the employees of his subcontractors on the theory that, because he has no employees who could (much less do) build buildings, building buildings is not "part of his trade, business or occupation." Such a "general contractor" is liable for workers' compensation to the subcontractors' employees not because he "undertakes to execute ... work, which is a part of his trade, business or occupation," but because he "undertakes to execute ... work, ... which he had contracted to perform...."
Our original opinion treated this case as possibly within the second category governed by R.S. 23:1601. We concluded that this is not a case in which defendant apartment complex owner "had contracted to perform," but only to provide or pay for, pest control service. We noted no record basis for deeming this case as possibly within the first category of § 1061, because there is no evidence either that all apartment owners as a rule have, or that this particular apartment owner has, employees who do pest control servicing, so as to make it a part of defendant's trade, business or occupation.
Defendant's application for rehearing argues that our "contracted to perform" reasoning conflicts with Highlands. Highlands held workers' compensation the exclusive remedy for a janitor against an office building owner who had contracted for the management of the building with a management company that in turn contracted with the plaintiff janitor's employer to provide janitorial service for the building. It appears from the opinion that the owner never "contracted to perform" (i.e., to do), but contracted only to "provide" (i.e., to pay the cost of), janitorial service for its tenants. As we now interpret the statute, as explained in our original opinion *854 in the present case, to have agreed to pay the cost of a service (e.g., electricity, telephone, pest control) for a rented office or apartment is not to have "contracted to perform" a work within R.S. 23:1061 (emphasis added). Highlands' reasoning ignored the "to perform" language of that clause, and is inconsistent with our present reasoning. Highlands is therefore overruled, with the approval of the court en banc, with Judges Byrnes and Williams dissenting from the overruling.
We reiterate that there is no sufficient record basis for concluding that defendant contracted to have work performed that "is customarily performed by employees of the principal," i.e., of defendant, as apparently required by Benson and Lewis for a conclusion that the work contracted to plaintiff's employer is "a part of [defendant's] trade, business or occupation."
Thus defendant owner is not liable to plaintiff for workers' compensationand is not immune from tort liabilityunder either the principal-contractor or the contractor-subcontractor clause of § 1061.
Defendant's and plaintiff's applications for rehearing are both refused.