520 So.2d 1104 (1987)
Gilbert BENOIT, Plaintiff-Appellant,
v.
GREY WOLF DRILLING, INC., et al., Defendants-Appellees.
No. 86-1130.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Writ Denied February 5, 1988.
McHugh & Guidry, George M. McHugh, St. Martinville, for plaintiff-appellant.
Bernard F. Levy, Houma, for intervenor-appellant.
Onebane, Donohoe, Keith M. Borne, Lafayette, for defendants-appellees.
Before FORET, YELVERTON and KNOLL, Judges.
KNOLL, Judge.
Patterson Services, Inc. (hereafter Patterson) appeals the dismissal of its intervention in the tort claim of Gilbert Benoit (hereafter Benoit), Patterson's employee, against Grey Wolf Drilling, Inc. (hereafter Grey Wolf). On motion for summary judgment the trial court determined Grey Wolf was Benoit's statutory employer and, therefore, was immune from tort liability.
*1105 Patterson appeals, contending the trial court's granting of Grey Wolf's motion for summary judgment was improper. We reverse, finding an issue as to material fact, and remand.

FACTS
On May 16, 1984, Grey Wolf contracted with Huffco to drill an oil and gas well. Subsequently, Grey Wolf orally contracted with Patterson to provide equipment, including conductor pipe, to perform a hammer job on the Huffco well.
On June 13, 1984, Benoit, an employee of Patterson, was performing a hammer job on the Huffco well when he fell through a hole on Grey Wolf's rig floor and injured his back.
Benoit sued Grey Wolf in tort for his injuries. Patterson intervened to recover worker's compensation benefits it paid to Benoit. Following Benoit's deposition, Grey Wolf moved for summary judgment, contending for the first time it was Benoit's statutory employer. The trial court granted Grey Wolf's motion for summary judgment and dismissed Benoit's and Patterson's claims.
Only Patterson timely appealed the judgment of the trial court. Benoit's untimely motion to join Patterson's appeal was denied and he was dismissed from this appeal.
Prior to addressing the substance of Patterson's appeal, we deem it necessary to briefly comment on the manner by which Grey Wolf raised its affirmative defense.
The answer shall set forth any affirmative defense urged. LSA-C.C.P. Art. 1005. The plea of "statutory employer" under the provisions of LSA-R.S. 23:1061 is an affirmative defense and the burden of proof is upon the party asserting it. Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). Since Grey Wolf never affirmatively pleaded the affirmative statutory employer defense in its answer, we must first determine whether the trial court properly reached the question of the propriety of the motion for summary judgment.
In answering our question affirmatively, we rely on the following language in Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981):
"Defendants' failure to plead the destruction of a natural waterway in their answers does not preclude consideration of such a material fact appearing in their opposing affidavit. Although there is authority to the contrary, see cases cited at 6 Moore's Federal Practice § 56.11[3], n. 54, pp. 56-252, we think the better rule is that either the answer should be deemed amended to conform to proof offered by the affidavits or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions."
Although the present case is somewhat different, Grey Wolf initiated the motion for summary judgment, spelling out its affirmative defense, we find it more amenable to the process outlined in Vermilion because Patterson was advised by the motion itself of the affirmative defense prior to filing its opposition to the motion. Accordingly, since neither Benoit nor Patterson objected to the assertion of the affirmative defense in this manner, we shall deem Grey Wolf's answer amended to conform to the allegation of the statutory employer defense raised in its motion for summary judgment and decide the propriety of the motion for summary judgment under the usual appellate rules pertaining to its adjudication.

SUMMARY JUDGMENT
Patterson contends that the evidence relied upon by the trial court does not establish that Grey Wolf was Benoit's statutory employer. Particularly, it contends that Benoit's work was specialized per se and under our ruling in Chauvin v. Gulf Coast Minerals, Inc., 509 So.2d 622 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 1175 So.2d (La.1987), there was an issue of material fact which precluded the granting of summary judgment.
*1106 The standard for appellate review of summary judgments was outlined in Vermilion as follows:
"A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Mashburn v. Collin, 355 So.2d 879 (La.1977). To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., supra; Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Adickes v. S.H. Kress & Co., supra; 6 Moore's Federal Practice, § 56.15[3]."
In its motion for summary judgment, Grey Wolf relied on the following statutes (in pertinent part):
LSA-R.S. 23:1032
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
LSA-R.S. 23:1061
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
Patterson's first contention, based on the holding of Duvalle v. Lake Kenilworth, Inc., 467 So.2d 850 (La.App. 4th Cir.1984), writ denied, 472 So.2d 919 (La.1985), is that Grey Wolf did not contract with Huffco to perform a hammer job or deliver surface casing to the well site; instead, Patterson *1107 argues Grey Wolf only contracted to provide those services. Accordingly, Patterson argues that Grey Wolf did not fall within the definition of a statutory employer.
In Duvalle an employee of a pest control company was injured while servicing the defendant's apartment complex. The court held that the building owner was not entitled to immunity from tort liability, reasoning that "an apartment complex does not undertake to execute any work by the mere fact of a contractual obligation to arrange for or provide pest control." Simply stated, in terms of R.S. 23:1032 and 1061 the apartment complex did not contract to perform pest control.
Applying the rationale of Duvalle to the present case, however, leads us to an opposite conclusion. Grey Wolf obligated itself to drill an oil and gas well for Huffco and particularly contracted to set conductor pipe to a specified depth. To fulfill that drilling obligation Grey Wolf subcontracted with Patterson to set the conductor pipe by performing a hammer job. Unlike Duvalle, Grey Wolf did not simply obligate itself to provide a service, it obligated itself to drill an oil and gas well. These facts are succinctly stated in the affidavits supporting Grey Wolf's motion for summary judgment, and stand uncontradicted.
Patterson next contends that Benoit's work was specialized in the sense established in Berry and accordingly, the statutory employer defense is not applicable. In support of its position Patterson premises its argument on Berry's shift in its interpretive analysis regarding the statutory employer defense and relies on our holding in Chauvin.
In Chauvin Southern Structures contracted with C.E. Whipp and Gulf Water Systems to fabricate and erect a metal building on Gulf Water Systems' property. When the contract was entered into, Southern Structures both fabricated and erected metal buildings. Pursuant to the contract, Southern Structures fabricated the building. However, during delays caused by financing difficulties encountered by Gulf Water Systems, Southern Structures made a corporate decision to limit its operation to the fabrication process. As a result of this decision Quality Steel Buildings Erectors, Inc. was organized to perform the erection services formerly done by Southern Structures, and all erection equipment and former employees of the erection division of Southern Structures were transferred from Southern Structures to Quality. Lennis Chauvin, one of the employees transferred from Southern Structures to Quality, was electrocuted while erecting Gulf Water Systems' metal building. Chauvins' heirs instituted a third party tort action against Southern Structures.
This court, directly addressing the two contract statutory employer situation presented by the relationship between Southern Structures and Quality, adopted the specialized per se analysis enunciated in Berry, supra, and stated:
"The interpretations of LSA-R.S. 23:1032 and 1061 have resulted in a great deal of discussion and the development of numerous `tests' for statutory employment. The primary reason advanced for the difficulty is that Section 1061 has been interpreted in a context for which it was never intended. The original purpose for that section was to prevent an employer from evading his compensation liability through the use of an intermediary contractor. Most litigation under this section has involved its use as a defense to tort liability. See W. Malone & H. Johnson, Louisiana Workers' Compensation Law & Practice, Sec. 126 in 13 Louisiana Civil Law Treatise 250-262 (2d ed. 1980). As a result of this `shield,' the principal has been elevated to a more preferred position than the injured employee's immediate employer, as the immunity is available regardless of whether the principal actually pays compensation.
Recently, the Supreme Court reviewed the question of statutory employment, and noted a change in point of view on the subject. In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), that court cited the cases of Benson v. Seagraves, 436 So.2d 525 (La.1983), Lewis v. Exxon Corp., 441 So.2d 192 (La. *1108 1983), and Rowe v. Northwestern Nat. Ins. Co., 471 So.2d 226 (La.1985) as evidence of a shift in "its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine to one which is more restrictive." 488 So.2d at 937.
Based on this observation, the Supreme Court sets forth its current method of analysis:
"Basically, a determination of whether a statutory employment relationship exists involves a three level analysis. In the first level, the primary focus is on the scope of the contract work. `The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered.' Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees. In this situation, `the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play' because the contractor is an independent business enterprise, rather than a mere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, Secs. 78, 126 (1980).
"If it is determined that the contract work is nonspecialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson, supra; Barnes, supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C. A. Larson, The Law of Workmen's Compensation, Sec. 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir.1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, Sec. 126, pp. 252-53, fn. 91.
"These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry giant be regular. Similarly while the type of contract work may be non-specialized (i.e. manual labor), for a small concern it may well be beyond the expertise *1109 or capability of its employees. 1A. Larson, Workmen's Compensation for Occupational Injuries and Death, Sec. 49.13 (Desk ed. 1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of `whether [the contract work] is, in that question of `whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors.' Id. (emphasis added.)
"Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level `[i]t is irrelevant that the principal has the financial resources of expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury.' Lewis, supra." 488 So.2d at 937-39.
* * * * * *
"It is our opinion that the work performed by Lennis Chauvin was specialized per se. The evidence shows that a special crew of workmen with particular skills is necessary to provide erection services. While some manufacturers may offer erection services, as Southern Structures did before July 1, 1979, they are not required to do so. When they do, they cannot utilize existing employees to perform this work, but must hire a separate group of individuals, train and equip them to do the job. The existence of independent firms which offer only erection services demonstrates the specialized nature of the work."
Applying the above analysis to the case sub judice, it is clear that there is a material issue of fact of whether Benoit was a specialized per se employee. Although, as pointed out in the affidavit submitted in opposition to Grey Wolf's motion for summary judgment, Grey Wolf could set its own conductor pipe, there are material issues of fact regarding Grey Wolf's custom in this regard and whether it had the equipment to perform a hammer job. Accordingly, sufficient evidence was not presented to grant summary judgment.
For the foregoing reasons, the judgment of the trial court dismissing the intervention of Patterson Services, Inc. is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal shall await final disposition of this matter in the trial court.
REVERSED AND REMANDED.