652 So.2d 617 (1995)
Eddie Dale PETERSON, Kim Taylor Peterson, Individually and on Behalf of Their Minor Children, Steven Dewayne Peterson, Eddie Dale Peterson, Jr. and Jeremy Peterson
v.
BE & K INCORPORATED OF ALABAMA and Johnny Parker.
No. 94 CA 0005.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Writ Denied May 12, 1995.
*620 William J. Perry, Gretna, for plaintiffsappellants, Eddie & Kim Peterson.
Thomas E. Loehn, New Orleans, for defendant-appellee, BE & K, Inc.
Robert J. Young, New Orleans, for defendant-appellee, CIGNA.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, sustaining the statutory employer defense and granting a motion for summary judgment, in a tort suit for damages.

BACKGROUND
The Babcock & Wilcox Company (B & W) is an Ohio-based company engaged in the manufacture of power and recovery boilers. Sunland Construction Company, Inc. (Sunland) is a general construction company wholly owned by B & W. BE & K, Incorporated (BE & K) is a general construction company which specializes in the construction of manufacturing facilities, and paper manufacturing facilities in particular. On November 11, 1987, B & W and BE & K entered into a joint venture agreement for the purpose of submitting a proposal to Gaylord Container Corporation for a boiler construction project.
On December 29, 1987, Gaylord Container Corporation entered into a turnkey construction agreement with the joint venture for the construction of the boiler project at its paper mill in Bogalusa, Louisiana.

FACTS
Prior to September 26, 1989, petitioner Eddie Dale Peterson was employed as a fitter by Sunland. At that time, Peterson was assigned to work on the Gaylord boiler construction project. On September 26, 1989, defendant Johnny Parker was employed by BE & K as a welder and was also assigned to work on the Gaylord boiler construction project. On that date, Parker welded a pad eye on a boiler door to facilitate the installation of the boiler door. As Peterson attempted to install the boiler door, the weld on the pad eye allegedly failed, causing the boiler door to fall. As a result of this accident, Peterson sustained personal injuries.
On September 4, 1990, Peterson filed a tort suit for personal injuries against BE & K, Parker, and the liability insurer of BE & K, alleging that the September 26, 1989, accident was caused by the negligence of BE & K and Parker. Peterson's wife and children also requested damages for loss of consortium. BE & K answered petitioners' petition, denying the allegations and alleging that the sole and proximate cause of the accident was the negligence of Peterson. *621 BE & K also alleged that Peterson was comparatively negligent.[1]
On October 13, 1992, BE & K filed a motion for summary judgment on the main demand. In support of its motion, BE & K alleged that Peterson's exclusive remedy against BE & K is worker's compensation.[2] BE & K alleged that, at the time of the alleged incident, BE & K and B & W were involved in a joint venture. BE & K further alleged that, pursuant to this joint venture, B & W hired Peterson's employer, Sunland, to perform part of the work. BE & K reasoned that, as a joint venturer with B & W, it was immune from tort liability. Peterson opposed the motion for summary judgment, alleging that neither B & W, BE & K, nor the joint venture was his statutory employer and that, as such, BE & K is liable to him in tort for the personal injuries he sustained as a result of the September 26, 1989, accident.
After a hearing, the trial court rendered judgment in favor of BE & K on the motion for summary judgment and dismissed Peterson's demands, with prejudice, at his costs. The trial court judgment was signed on September 3, 1993. From this adverse judgment, Peterson appeals, assigning the following specifications of error:
1. The Trial Court erred in its finding that the defendant was plaintiff's statutory employer under the analysis of Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986).
2. The Trial Court erred in its finding that the defendant could avail itself of the "two-contract" statutory employer defense as set forth in LA.R.S. 23:1061 and 1032.
3. The Trial Court erred in finding that the defendant was a member of a joint venture that would provide it tort immunity against the plaintiff.

*622 4. The Trial Court erred in its failure to find that the statutory employer defense as set forth in both Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986) and LA.R.S. 23:1061 and 1032 is unconstitutional.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. 1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).

JOINT VENTURE
In Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212, 215 (La.App. 1st Cir.), writ denied, 458 So.2d 123 (La.1984), the court noted that the essential elements of a joint venture are generally the same as those of a partnership, namely, two or more parties combining their property, labor, skill, etc. in the conduct of a venture *623 for joint profit, with each having some right of control. As a result, joint ventures are generally governed by the law of partnership. Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159, 1161 (La.App. 3rd Cir.1990); Buckbee, Individually and as Administratrix of Succession of Buckbee v. AWECO, Inc., 418 So.2d 698, 702 (La.App. 3rd Cir.), writ denied, 422 So.2d 166 (La.1982).
LSA-C.C. art. 2801 defines partnership, in pertinent part, as follows:
A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
The same requisites are applicable to a joint venture and are as follows:
(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.
Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d at 215.
What constitutes a joint venture is a question of law, while the existence or nonexistence of a joint venture is a question of fact. Rester v. Aetna Casualty and Surety Company, 598 So.2d 673, 676 (La.App. 3rd Cir.1992). After carefully reviewing the evidence presented herein, we find that no genuine issue of material fact exists in the present case concerning the factual determination of whether a joint venture existed between B & W and BE & K with regard to the boiler construction project.
All of the items enumerated above are found in the Joint Venture Agreement between B & W and BE & K. The joint venture was defined in the agreement as a temporary association of B & W and BE & K for the purpose of submitting a proposal and performing the contract for the Gaylord boiler construction project. The work to be performed under the contract with Gaylord was divided between B & W and BE & K. Terminal point lists were prepared and attached to the joint venture agreement to further define the scope of the equipment, materials, and responsibilities of each member of the joint venture. The decision-making responsibilities for the joint venture were vested in a management committee, which was comprised of two representatives of each member of the joint venture. The parties' agreement contemplated that the profits would be allocated on the following basis:

1. B & W 50.32%
2. BE & K 49.68%

Moreover, the agreement provided for the allocation of costs or risks of loss on the same basis as the parties shared in profits.
The relationship between B & W and BE & K exhibits all of the elements of a joint venture. Clearly, B & W and BE & K were engaged in a joint venture. When two or more persons or concerns enter into an agreement which the law defines as a partnership or joint venture, it becomes a juridical entity, and the liability of the parties is determined by the law relating to partnership or joint venture. This is true even when the parties may not have thought of such consequences and even sought to avoid certain consequences of the relationship.[3]See Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d at 216.

STATUTORY EMPLOYER DEFENSE
Having determined that B & W and BE & K are engaged in a joint venture, we must determine whether the joint venture was Peterson's statutory employer.
Under certain circumstances, an owner or principal can be held liable to pay worker's compensation benefits to an employee of a contractor he engages. Duncan *624 v. Balcor Property Management, Inc., 615 So.2d 985, 988 (La.App. 1st Cir.), writ denied, 617 So.2d 936 (La.1993); Croy v. Bollinger Machine Shop and Shipyard, Inc., 578 So.2d 945, 948 (La.App. 1st. Cir.), writ denied, 586 So.2d 532 (La.1991). These circumstances are set forth in LSA-R.S. 23:1061 A, which at all times pertinent hereto, provided, in part, as follows:[4]
Where any person (in this Section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.
However, in such circumstances, worker's compensation benefits are the exclusive remedy of the contractor's employee held to be the statutory employee of the principal, and such employers are immune from tort liability for injuries sustained by employees under those circumstances. LSA-R.S. 23:1032.
A statutory employment claim consists of two elements: (1) that the employee be engaged in the trade, business, or occupation of the principal; and (2) that the principal be engaged in that trade, business, or occupation at the time of plaintiff's injury. Duncan v. Balcor Property Management, Inc., 615 So.2d at 988; Croy v. Bollinger Machine Shop and Shipyard, Inc., 578 So.2d at 948.
Prior to the 1989 amendment to LSA-R.S. 23:1061, the courts utilized a three-step analysis established in Berry v. Holston Well Service, Inc., 488 So.2d 934, 937-38 (La. 1986), to determine whether a statutory employment relationship exists. Duncan v. Balcor Property Management, Inc., 615 So.2d at 989.
Under the Berry analysis, the first step is to determine whether the contract work is specialized or non-specialized. This is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education, and/or equipment not normally possessed by those outside the contract field. Berry v. Holston Well Service, Inc., 488 So.2d at 938; Hutchins v. Hill Petroleum Company, 609 So.2d 312, 316 (La.App. 3rd Cir.1992). The entire scope of the contract work must be considered as opposed to the specific task of the individual employee. Berry v. Holston Well Service, Inc., 488 So.2d at 937. If the contract work is "specialized per se, as a matter of law, the work is not a part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees." Berry, 488 So.2d at 938. The second step of the Berry analysis requires a comparison of the principal's trade, business, or occupation and the contract work to determine whether the contract work may be considered a part of the principal's trade, business, or occupation. Carter v. Chevron Chemical Company, 593 So.2d 942, 946 (La.App. 4th Cir.), writ denied, 596 So.2d 211 (La.1992). Normally, for work to be considered within a principal's trade, business, or occupation, it must be routine, customary, or, at least, an activity that is necessarily part of the day-to-day operations, rather than extraordinary or non-recurring activities. Hutchins v. Hill Petroleum Company, 609 So.2d at 316. The final step of the Berry analysis requires a determination of whether the principal is engaged in the work at the time of the alleged accident. Hutchins v. Hill Petroleum Company, 609 So.2d at 317. Although the contract work may customarily *625 be considered part of a principal's trade, business, or occupation, if at the time of the alleged injury the principal had no employees doing work similar to the contract work, then the contract work will not be considered part of the principal's trade, business, or occupation as of the time of the injury. Hutchins v. Hill Petroleum Company, 609 So.2d at 317.
The 1989 amendment to LSA-R.S. 23:1061 apparently broadened the definition of statutory employers and legislatively overruled Berry v. Holston Well Service, Inc., 488 So.2d at 934. Frith v. American Motorists Insurance Company, 613 So.2d 249, 251 (La. App. 1st Cir.1992), writ denied, 617 So.2d 932 (La.1993); Hutchins v. Hill Petroleum Company, 609 So.2d at 315. The Louisiana Supreme Court has yet to determine whether the amendment to LSA-R.S. 23:1061, which has an effective date of January 1, 1990, is retroactive. See Bowens v. General Motors Corp., 608 So.2d 999, 1001 n. 4 (La.1992). However, appellate court decisions have held that the amendment is not retroactive. See Frith v. American Motorists Insurance Company, 613 So.2d at 252; Hutchins v. Hill Petroleum Company, 609 So.2d at 316; Young v. Lyons Petroleum, Inc., 598 So.2d 702, 706 (La.App. 3rd Cir.), writs denied, 605 So.2d 1149, 1150 (La.1992); Carter v. Chevron Chemical Company, 593 So.2d at 946; Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226, 1231 n. 1 (La.App. 4th Cir.1991), writs denied, 592 So.2d 1299, 1300 (La.1992).
Moreover, the Louisiana Supreme Court has been reluctant to determine whether the employee is engaged in the trade, business, or occupation of the principal and, hence, whether a statutory employment relationship exists on a motion for summary judgment. See Picard v. Zeit Exploration Co., Inc., 94-1555 (La. 9/30/94), 642 So.2d 862; Malloy v. Byron E. Talbot Contractors, Inc., 94-1148 (La. 7/1/94), 639 So.2d 1181; Hanks v. Shell Oil Co., 94-0483 (La. 4/4/94), 635 So.2d 1118; Moore v. Crystal Oil Company, 93-3103 (La. 2/25/94), 632 So.2d 758. See also Favron v. Gulf States Utilities Company, 93-1603 (La. App. 1st Cir. 11/23/94), 649 So.2d 983.
However, the employee's work has been held to be automatically within the trade, business, or occupation of the principal where there is a particular two-contract relationship between the parties. Duncan v. Balcor Property Management, Inc., 615 So.2d at 989; Croy v. Bollinger Machine Shop and Shipyard, Inc., 578 So.2d at 948. In Berry v. Holston Well Service, Inc., 488 So.2d at 936, n. 3, the Louisiana Supreme Court described the two-contract situation as follows:
[A]n owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the "general."
In other words, to enjoy the tort immunity available under the two-contract theory, the defendant must show: (1) that the defendant entered into a contract with a third party; (2) that pursuant to that contract, work must be performed; and (3) that in order for defendant to fulfill its contractual obligation to perform the work, defendant entered into a subcontract for all or part of the work performed. Duncan v. Balcor Property Management, Inc., 615 So.2d at 989; Legros v. Norcen Exploration, Inc., 583 So.2d 859, 863 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991); Beddingfield v. Standard Construction Company, Inc., 560 So.2d 490, 491-92 (La.App. 1st Cir. 1990). See Freeman v. Moss Well Service, Inc., 614 So.2d 784, 786 (La.App. 2nd. Cir.), writ denied, 618 So.2d 413 (La.1993). The two-contract situation also has temporal requirements, namely, that the principal must first contract to do the work and then contract for the subcontractor to do all or part of the work. Taylor v. Broadmoor Corporation, 623 So.2d 674, 676 (La.App. 4th Cir. 1993); Croy v. Bollinger Machine Shop and Shipyard, Inc., 578 So.2d at 949; Crochet v. Westminster City Center Properties, 572 So.2d 720, 723 (La.App. 4th Cir.1990).
In the instant case, the evidence presented at the hearing on the motion for *626 summary judgment consisted of documentary evidence, including the joint venture agreement, a Sunland estimate/proposal work sheet, a Sunland proposal approval, a Sunland erection request, a Sunland proposal confirmation, certain Sunland procurement authorizations, and the turnkey construction agreement with Gaylord Container Corporation, and the deposition testimony of Clyde Shearer and Joseph C. Bowman.
As noted earlier, the joint venture agreement reveals that B & W and BE & K formed the joint venture on or about November 11, 1987. The joint venture of B & W and BE & K entered into a contract with Gaylord for the construction of the boiler on December 29, 1987. Although estimates, proposals, and work sheets reveal that Sunland had been requested to and prepared a bid on the boiler project work on October 27, 1987, the procurement authorizations show that the Sunland work was not authorized until after the date of the contract with Gaylord.
The deposition testimony of Clyde Shearer revealed that he was employed by Sunland from its inception in 1986. Shearer served as Sunland's project administrator generally, and he was the project coordinator for Sunland on the Gaylord boiler construction project. In his capacity as project coordinator, Shearer supported the staff management in both the office and at the job site with administrative tasks involving costs, schedules, and contracts. Shearer testified that, under its contract on the Gaylord boiler construction project, Sunland agreed to receive, unload, store, and erect a paper recovery boiler manufactured by B & W. According to Shearer, Sunland had a written contract with B & W to perform those services. However, because of the relationship between B & W and Sunland, the agreement was in the form of purchase authorizations, which set forth the pricing summary for the scope of the work, and the erection request, which set forth the scope details. During the proposal stage of the project and prior to consummating the contract, on or about October 27, 1987, Sunland prepared a pricing letter for the boiler construction project. Thereafter, in 1988, certain procurement authorizations were issued, authorizing the performance of the work pursuant to the bid.
Joseph C. Bowman, an employee of BE & K, was the senior manager on site at the boiler construction project. According to Bowman's deposition testimony, during the joint venture project, B & W was given specific duties of project management and BE & K was given site management responsibilities.
Bowman testified that the two companies formed a joint venture in part because a former senior manager with B & W joined BE & K and put the idea for the joint venture project before Gaylord. However, the two companies had often associated on projects all over the country wherein BE & K would erect B & W boilers, often with B & W acting as a subcontractor on a BE & K project. Bowman testified that, from the very inception of the project, B & W and BE & K were partners in the project. According to Bowman, the job was split between BE & K and B & W on a 48%-52% basis. B & W was to provide the recovery boiler and supply the equipment, and BE & K was to perform the foundation work.
After reviewing all of the evidence in the record, it is clear that each member of the joint venture obtained proposals from various subcontractors to fulfill its obligations under the joint venture agreement and the boiler construction contract. The joint venture was then formed, and a proposal was made by the joint venture to Gaylord for the boiler construction contract, which was signed on December 29, 1987. Thereafter, each member then subcontracted with whatever subcontractors necessary to complete its responsibilities under the contract with Gaylord. With regard to Sunland and because of the relationship between B & W and Sunland, Sunland's subcontract was in the form of procurement authorizations. Without these authorizations, the work, previously bid on by Sunland, would not have been awarded to Sunland. Only after the execution of these procurement authorizations was Sunland authorized to perform the work pursuant to its prior bid.
Moreover, it is clear that, at the time of his injuries, Peterson was performing work in *627 furtherance of the joint venture between B & W and BE & K, namely the installation of the door to the boiler, which was part of the boiler construction project. In Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518, 529 (La.App. 3rd Cir.), writ denied, 247 La. 613, 614, 615, 172 So.2d 700 (La.1965), the court stated:
Where the employee is subject to the joint control of several employers at the same time and for the same work, he is entitled, if injured, to subject them all to his compensation claim. * * * If the work being done at the time of the accident was in furtherance of a joint enterprise shared by all employers, so that each of them had a direct financial interest in the entire job, we are presented with a case of partnership or joint enterprise liability. * * * It is not necessary, that each partner or joint venturer personally control the work of the injured employee. It is sufficient that they are engaged in a common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all. (citations omitted.)
Clearly, under these facts, the joint venture of B & W and BE & K is the statutory employer of Peterson. As such, Peterson's exclusive remedy against the joint venture is worker's compensation.

BE & K'S ENTITLEMENT TO IMMUNITY FROM TORT LIABILITY
Having determined that the joint venture, as Peterson's statutory employer, is entitled to the exclusive remedy provision of LSA-R.S. 23:1032, we must determine whether BE & K, as a member of such joint venture, is, likewise, immune from tort liability.
LSA-R.S. 23:1032 provides, in pertinent part, as follows:
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. (Emphasis added.)
While a partnership is specifically listed in LSA-R.S. 23:1032 as being entitled to the immunity, a joint venture is not so enumerated. In Buckbee, Individually and as Administratrix of Succession of Buckbee v. AWECO, Inc., 418 So.2d at 702, the court was presented with the issue of whether a joint venture is entitled to the immunity even though that entity is not specifically enumerated in the statute. The court stated:
We find joint ventures to be analogous and practically synonymous with partnerships except that the joint venture is somewhat more limited than the partnership. There exists a commonality of purpose, control, intent and subject in the relationship between the parties. There can be no logical reason to treat the two entities (partnership and joint venture) or their members differently under LSA-R.S. 23:1032 simply because a joint venture and its members is [sic] not specifically enumerated in the statute.
As the jurisprudence has recognized the applicability of partnership law to joint ventures we see no reason to distinguish the two as far as the applicability of LSA-R.S. 23:1032 is concerned. We, therefore, hold that a joint venture and its members *628 is [sic] covered by the exclusive remedy provision of LSA-R.S. 23:1032. To hold otherwise would reach an anomalous result without a valid distinction.
418 So.2d at 702.
Applying this rationale to the instant case, we find that, like the partners to a partnership, a member of a joint venture is covered by the exclusive remedy provision of LSA-R.S. 23:1032. As such, Peterson's exclusive remedy against BE & K is in worker's compensation, and the trial court correctly granted BE & K's motion for summary judgment.

CONSTITUTIONALITY OF STATUTORY EMPLOYER DEFENSE
The final issue to be addressed is the constitutionality of the statutory employer defense. The constitutionality of the exclusivity provision and statutory employer defense has been considered by the courts of this state on numerous occasions. See Bazley v. Tortorich, 397 So.2d 475 (La.1981), and Williams v. Gervais F. Favrot Company, 499 So.2d 623 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987).
In the instant case, Peterson contends that the statutory employer defense insulates a principal from the employees of a contractor when the principal has no compensation obligation to the employee. Peterson reasons that, as a result, a group of potential tortfeasors are granted immunity without any rational basis or justifiable distinction. However, Peterson failed to demonstrate that the Louisiana worker's compensation scheme is unconstitutional with respect to the tort immunity accorded to statutory employers who have not actually paid compensation.

CONCLUSION
For these reasons, the judgment of the trial court, granting the motion for summary judgment filed by BE & K, is affirmed. Peterson is cast for all costs on appeal.
AFFIRMED.
NOTES
[1] Various pleadings were filed by other parties, including a petition of intervention filed by Sunland's worker's compensation insurer. However, none of the issues raised in those pleadings are relevant to the issues presented in the instant appeal. The issues raised by petition of intervention are addressed in a companion appeal of Peterson v. BE & K, Inc., 94-1788, 1995 WL 237007 (La.App. 1st Cir. 3/3/95).
[2] Our review of the record indicates that the issue of whether BE & K is immune from tort liability was raised for the first time in BE & K's motion for summary judgment. Generally, the plea of "statutory employment" under the provisions of LSA-R.S. 23:1061 and 1032 is an affirmative defense, which must be set forth in the answer. LSA-C.C.P. art. 1005; Benoit v. Grey Wolf Drilling, Inc., 520 So.2d 1104, 1105 (La. App. 3rd Cir.1987), writ denied, 522 So.2d 566 (La.1988). However, the Louisiana Supreme Court noted in Vermilion Corporation v. Vaughn, 397 So.2d 490, 493 (La.1981), that:

Defendants' failure to plead the destruction of a natural waterway in their answers does not preclude consideration of such a material fact appearing in their opposing affidavit. Although there is authority to the contrary, see cases cited at 6 Moore's Federal Practice § 56.11[3], n. 54, pp. 56-252, we think the better rule is that either the answer should be deemed amended to conform to proof offered by the affidavits or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions.
In Benoit v. Grey Wolf Drilling, Inc., 520 So.2d at 1105, the defendant failed to affirmatively plead the statutory employer defense in its answer. However, the defendant subsequently filed a motion for summary judgment and a memorandum in support thereof, which outlined its reliance on the affirmative defense of immunity under the statutory employment plea. The petitioner was advised by the motion itself of the affirmative defense prior to filing its opposition to the motion for summary judgment. In holding that the defendant's answer was deemed amended to conform to the allegation of the statutory employer defense raised in its motion for summary judgment, the court noted that the motion for summary judgment fully outlined the affirmative defense and that no other party objected to the assertion of the affirmative defense in this manner.
Similar to Benoit v. Grey Wolf Drilling, Inc., in the instant case, although BE & K did not set forth the affirmative defense in its answer, BE & K fully outlined the statutory employer defense in its motion for summary judgment. Moreover, Peterson did not object to the assertion of the affirmative defense in the motion for summary judgment. Therefore, BE & K's answer is deemed to conform to the allegation of the statutory employer defense raised in its motion for summary judgment. See Danna v. Barq's, Inc., 612 So.2d 253, 255 (La.App. 4th Cir.1992); Benoit v. Grey Wolf Drilling, Inc., 520 So.2d at 1105; and Sider v. Robin Temporary Service, 515 So.2d 1123, 1134 (La.App. 5th Cir.1987), writ denied, 519 So.2d 146 (La.1988).
[3] We note that, in the Joint Venture Agreement, the parties specifically provided that, by executing the agreement, they did not intend to form a partnership or create an agency relationship.
[4] By Acts 1989, No. 454, § 3, effective January 1, 1990, the legislature amended LSA-R.S. 23:1061 A to add the following provision:

The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.